**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3417-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TROY LEEPER, a/k/a JOJO
TOJO, JOE JOE LEEPER,
and TROY CREEPER,

    Defendant-Appellant.

_____

Submitted November 19, 2024 – Decided April 19, 2025

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-07-1914.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Anderson D. Harkov, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Troy Leeper appeals from the May 26, 2023 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. In January 2018, defendant was tried before a jury and convicted of aggravated assault and conspiracy to commit robbery. The trial court sentenced defendant to an extended term of imprisonment as a persistent offender and imposed a fifteen-year term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant contends his trial counsel rendered ineffective assistance by not advising him that he was eligible for an extended term of imprisonment and by failing to show him a crime scene surveillance video recording that had been turned over in discovery. Defendant claims that as a result of his counsel's constitutionally deficient representation, he rejected the State's final plea offer and proceeded to trial without a full understanding of the possible consequences of his decision. He also argues his trial counsel was ineffective for failing to call his sister as a witness. Aside from his claims against his trial counsel, defendant contends his PCR counsel similarly rendered ineffective assistance.

After reviewing the record in light of the parties' arguments and the governing legal principles, we affirm the PCR denial without an evidentiary hearing with respect to defendant's trial counsel's performance. We decline to

hear defendant's newly-minted claims against his PCR counsel, which could be properly raised in a separate PCR petition.

## I.

The facts concerning the ambush assault that defendant and codefendant Leonardo J. Graulau[1] committed are thoroughly recounted in our direct appeal opinion and need not be repeated here. See State v. Leeper, A-3430-17 (App. Div. Sept. 3, 2020) (slip op. at 4-11). We focus instead on the procedural history leading to this appeal.

At the November 13, 2017 pretrial conference, defendant rejected the State's plea offer. Defendant confirmed he was terminating plea negotiations and wished to proceed to trial. Although there was no express mention of the potential for an extended term of imprisonment, defendant acknowledged that he faced "the possibility of [fifty] years in prison" if the jury found him guilty.

The jury trial was convened over the course of two days in January 2018. Defendant was acquitted of robbery but found guilty of aggravated assault and conspiracy to commit robbery.

---

[1] Graulau was also convicted of aggravated assault and conspiracy to commit robbery and acquitted of robbery. The trial court sentenced him to a nine-year term of imprisonment subject to NERA on the aggravated assault conviction. On the conspiracy to commit robbery conviction, the court sentenced Graulau to a concurrent seven-year term of imprisonment subject to NERA.

3                                                                          A-3417-22

On March 2, 2018, the trial court sentenced defendant. At the sentencing hearing, defendant told the court:

> I feel as though, like, during my trial the evidence that the [p]rosecutor had . . . I wasn't aware of some of them. As far as the, like, the body cam that was on during my trial, I never seen that, never went through that, none of that. The other day I was like I feel as though I came to this trial blind because <u>if I would have seen all the evidence they had against me, I would have just copped out</u> . . . .
>
> . . . I feel as though I ain't had a reasonable trial. I feel as though my trial was a little iffy.
>
> And for the victim to come here and stated that he lied on both of his statements, and stated that I ain't never touch him, I ain't never robbed him, they ain't never look into that. I feel as though like me growing up, anything that I've done, I plead guilty to because I know I was guilty to it. But when this case right here, I know I wasn't guilty. What would I look like robbing somebody for anything?
>
> . . . I feel as though I looked guilty because I was here with my co-d[efendant] during trial. But if I woulda [sic] came by myself during trial, I could have won it.
>
> [(Emphasis added).]

The trial court sentenced defendant on the aggravated assault conviction to an extended term of imprisonment as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The court imposed a fifteen-year term of imprisonment

subject to NERA. On the conspiracy to commit robbery conviction, it sentenced defendant to a concurrent term of eight years of imprisonment subject to NERA.

On September 3, 2020, we affirmed defendant's conviction and sentence. Leeper, slip op. at 4. On November 20, the New Jersey Supreme Court denied defendant's petition for certification. State v. Leeper, 244 N.J. 433 (2020).

On June 15, 2022, defendant filed a pro se PCR petition and a request for appointment of counsel. On December 6, defendant submitted a certification to his PCR counsel raising numerous claims, including that his trial counsel did not inform him he was extended-term eligible.

On May 24, 2023, the PCR court heard oral argument and denied defendant's petition. The court determined that some of defendant's PCR claims had been raised and rejected on direct appeal and were thus procedurally barred by Rule 3:22-5.[2] It considered defendant's ineffective assistance claims on their merits, addressing whether defendant established a prima facie case warranting an evidentiary hearing.

---

[2] Rule 3:22-5 provides, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

The PCR court rejected defendant's claim that his trial counsel "never reviewed with him the footage of the incident prior to trial which would have led him . . . to take a plea deal and consequently resulted in a lighter sentence." Although the court recognized "the victim['s] testimony does show some conflicting statements," it found that "defendant fail[ed] to explain that he would have been willing to take the plea had he actually seen the video." It emphasized that defendant continued to claim his innocence at sentencing, "which means he would not have been able to admit to the truthful factual basis of the charges."[3] Ultimately, the court rejected defendant's argument that "[he] took the position [he] was innocent, but if [he] had seen the video [he] would have taken the plea."

The PCR court also denied defendant's argument that his attorney was ineffective for failing to present testimony from defendant's sister. Based on her certification, the court reasoned that trial counsel "was aware of [defendant]'s witness sister and knew what . . . she would testify to . . . there appears to be no issue that the attorney knew about the witness." It noted that "one of the most difficult strategic decisions that any trial attorney confronts is 'determining

---

[3] The PCR court explained, "my understanding is that there was a plea offer, that there was a plea colloquy, and [defendant] refuses to admit to the truthful, factual basis to get the plea. That he refused to accept the plea because of his position he was not guilty."

which witnesses to call to the stand.'" (quoting State v. Arthur, 184 N.J. 307, 320 (2005)). Acknowledging the "highly differential" standard of review of a trial attorney's strategic decisions, the PCR court found that counsel's decision not to call defendant's sister to testify "clearly—was a trial decision." The court also found the decision was not so prejudicial that it warranted relief.

In sum, the PCR court denied the petition, finding that defendant has "not established the necessary prima facie showing requiring an evidentiary hearing." This appeal followed. Defendant raises the following contentions for our consideration:

> POINT I
>
> THE PCR COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS CLAIMS THAT TRIAL COUNSEL DID NOT ADVISE HIM THAT HE WAS EXTENDED TERM ELIGIBLE AND TRIAL COUNSEL NEVER SHOWED HIM THE CRIME SCENE VIDEO, WERE NEVER REFUTED.
>
> POINT II
>
> DEFENDANT'S PETITION FOR [PCR] SHOULD BE REMANDED WITH INSTRUCTIONS TO THE PCR COURT TO ORDER THE OFFICE OF THE PUBLIC DEFENDER TO APPOINT NEW PCR COUNSEL WHO WILL FULFILL [THEIR] OBLIGATION TO

7

PROVIDE DEFENDANT WITH THE EFFECTIVE ASSISTANCE OF COUNSEL. (NOT RAISED [AT THE PCR COURT]).

POINT III

THE FAILURE OF TRIAL COUNSEL TO ADVISE DEFENDANT, PRIOR TO THE PLEA CUT OFF, THAT IF HE WAS CONVICTED FOLLOWING A TRIAL, HE COULD BE SENTENCED TO AN EXTENDED TERM, COMBINED WITH HIS FAILURE TO REVIEW ALL THE DISCOVERY WITH DEFENDANT, ESPECIALLY A CRIME SCENE VIDEO, RESULTED IN DEFENDANT CHOOSING TO PROCEED TO TRIAL WITHOUT A FULL UNDERSTANDING OF THE CONSEQUENCES, DEPRIVING DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT IV

THE FAILURE OF TRIAL COUNSEL TO CALL THE ONLY EYEWITNESS TO THE CRIME WHO TOLD HIM SHE WOULD TESTIFY SHE SAW THE INCIDENT, DEFENDANT NEVER ASSAULTED THE VICTIM, AND, IN FACT, HE TRIED TO STOP THE ASSAULT, DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

II.

We preface our analysis by acknowledging the legal principles governing this appeal. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). It provides "a built-in 'safeguard

that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

When petitioning for PCR, a petitioner must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Id. at 541. To meet this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

Where an evidentiary hearing has not been held on a PCR petition, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 419-21 (2004). However, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)).

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). A defendant's right to effective assistance of counsel extends to the plea negotiation process. See Missouri v. Frye, 566 U.S. 134, 140

9

(2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler v. Cooper, 566 U.S. 156, 168 (2012).

In addressing an ineffective assistance of counsel claim raised in a PCR petition, New Jersey courts follow the two-part test articulated in Strickland, 466 U.S. at 687. See State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (quoting Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "A defendant asserting plea counsel's assistance was ineffective may meet the first prong of the Strickland standard if the defendant can show counsel's representation fell short of the prevailing standards expected of criminal defense attorneys." State v. Vanness, 474 N.J. Super. 609, 624 (App. Div. 2023) (citing Padilla v. Kentucky, 559 U.S. 356, 366-67 (2010)).

When assessing the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 668-69. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 269 (1999). Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 687. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the 'distorting effects of hindsight.'" Marshall, 148 N.J. at 157 (quoting Strickland, 466 U.S. at 689).

The second Strickland prong requires the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. This "is an exacting standard." Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed," rather the defendant must "affirmatively prove" it. Ibid. (first citing Fritz, 105 N.J. at 52; and then quoting Strickland, 466 U.S. at 693).

To establish prejudice under the second <u>Strickland</u>/<u>Fritz</u> prong in the context of plea negotiations, a defendant must demonstrate:  "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court[;]" "the court would have accepted its terms[;]" and "the conviction or sentence, or both, under the offer's terms would have been less severe" than those imposed after trial.  <u>Lafler</u>, 566 U.S. at 164.

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim.  <u>Preciose</u>, 129 N.J. at 462-63.  However, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted."  <u>Marshall</u>, 148 N.J. at 158 (citations omitted).

"The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing."  <u>Vanness</u>, 474 N.J. Super. at 623 (citing <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999)).  The PCR court should grant an evidentiary hearing only when:  "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record;

and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." Ibid. (citing State v. Porter, 216 N.J. 343, 354 (2013)).

III.

We first address defendant's contention the PCR court erred in denying his request for an evidentiary hearing based on his trial counsel's "fail[ure] to inform him that he was facing an extended term of life-in-prison if he was convicted of count one [(first-degree robbery)] of the indictment." Defendant contends that as a result of his trial counsel's deficient representation, his "decision to proceed to trial was entered unknowingly and involuntarily without full knowledge of its material consequences as required by [the] New Jersey Constitution." Claiming he relied "on his attorney to his detriment, having expected his attorney to explain that a crucial consequence of his rejecting a plea offer would be the risk he would be convicted of a crime that would expose him to life imprisonment," defendant argues he "should be given another chance to accept the plea offer."

We are unpersuaded. Defendant was not sentenced to a life term. As we have noted, at the pretrial conference, defendant confirmed he was terminating plea negotiations, wanted to proceed to trial, and understood he faced "the possibility of [fifty] years in prison" if the jury found him guilty. He thus

acknowledged he could receive a prison sentence substantially longer than the one that was actually imposed.

Further, defendant proceeded to trial because he maintained his innocence. He continued to maintain his innocence at the sentencing hearing. As the PCR court aptly noted:

> [D]efendant continued to claim his innocence which means he would not have been able to admit to the truthful factual basis of the charges. Further, defendant refused to give the required truthful factual [basis] . . . —as part of a plea agreement that had been worked out and agreed to. As a result the plea agreement that was offered to defendant was ultimately rejected.

Considering all relevant circumstances, we are satisfied that defendant has not established that he would have accepted the State's plea if trial counsel advised him of his extended-term eligibility based on his prior convictions that made him a persistent offender. See Lafler, 566 U.S. at 163; Strickland, 466 U.S. at 687. Therefore, defendant has not established a prima facie case required to obtain an evidentiary hearing, much less vacate his convictions and permit him to accept the plea offer he rejected.

## IV.

We turn next to defendant's contention his trial counsel rendered ineffective assistance by failing to show him surveillance video footage, causing

14

him to reject the State's plea offer and proceed to trial without a full understanding of the evidence against him. Defendant argues that because counsel failed to review all discovery with him, he went to trial "blind" and rejected a plea offer he otherwise would have accepted.

Again, we are unpersuaded. The record shows that at the November 2017 pretrial conference when the parties had concluded plea negotiations, the State placed "the salient facts on the record,"[4] which encompassed the fact that "officers were able to obtain surveillance footage" showing the assault. The prosecutor described the video, explaining "[a]t one point this defendant does appear to . . . stop the fighting at some point, only to speak to [the victim] and then the assault is continued. At that point this defendant is then seen dragging the victim off of the camera's view." Following the prosecutor's recounting of the trial evidence, defendant confirmed he wanted to proceed to trial and understood the risks of going to trial, including that he faced fifty years in prison if a jury found him guilty.

---

[4] Rule 3:9-1(f) provides in pertinent part, "[t]he [pretrial] conference shall be conducted in open court with the prosecutor, defense counsel and the defendant present. Unless objected to by a party, the court shall ask the prosecutor to describe, without prejudice, the case including the salient facts and anticipated proofs." One purpose of this procedure is to make certain defendants understand the proofs arrayed against them before the plea cutoff rule is invoked. See R. 3:9-3(g).

Even accepting defendant's assertion that he never viewed the surveillance video, we are satisfied, as was the PCR court, he failed to establish Strickland's prejudice prong. See Lafler, 566 U.S. at 163; Strickland, 466 U.S. at 687. As the PCR court explained:

> [Defendant] asserts that his trial attorney never reviewed with him the footage of the incident prior to trial which would have led him . . . to take a plea deal and consequently resulted in a lighter sentence. However, [] defendant fails to make the required prima facie showing of ineffective assistance of counsel on this ground.
>
> While the section in this case, and this is the [way] the [c]ourt read[s] it, . . . the victim testimony does show some conflicting statements, [] defendant fails to explain that he would have been willing to take the plea had he actually seen the video. There's no allegation that he sought the offer from the State once he learned that the video existed, or what any offer was during the trial. Further, at sentencing, defendant continued to claim his innocence which means he would not have been able to admit to the truthful factual basis of the charges.
>
> . . . .
>
> Effectively defendant is arguing I refuse to plead as required when we had a plea agreement because I took the position I was innocent but if I had seen the video I would have taken the plea. The [c]ourt finds that there's not a prima facie basis for this under the facts of this case.

We see no basis upon which to reach a different conclusion.

16

V.

We next address whether "trial counsel fell short of effectively representing defendant when he failed to call a readily available witness who told counsel she had seen the incident and defendant did not assault the victim." Defendant contends counsel's performance was "especially egregious because the potential witness, defendant's sister, was the only witness available to trial counsel, and thus the only chance to counter the victim's testimony." He maintains that his sister's testimony would have confirmed he "never assaulted the victim, but tried to intervene to stop the assault." Further, defendant argues, her testimony "was even more important because the victim told the police defendant had nothing to do with the assault until [the victim] watched the crime scene video with law enforcement and afterwards changed his story." He claims there is no "evidence trial counsel attempted to subpoena [his sister] or even asked her to appear as a witness on [his] behalf."

"In addressing an ineffective assistance [of counsel] claim based on a counsel's failure to call an absent witness, a PCR court must unavoidably consider whether the absent witness's testimony would address a significant fact in a case, and assess the absent witness's credibility." State v. L.A., 433 N.J. Super. 1, 15 (App. Div. 2013). "However, the assessment of an absent witness's

credibility is not an end in itself." Ibid. Instead, "it is a factor in the court's determination whether there is a reasonable probability that, but for the attorney's failure to call the witness, the result would have been different—that is, there would have been reasonable doubt about the defendant's guilt." Id. at 15-16.

In Arthur, our Supreme Court emphasized:

> Determining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront. A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.
>
> [184 N.J. at 320-21.]

Accordingly, "a court's review of such a decision should be 'highly deferential.'" Id. at 319, 321; see also Strickland, 466 U.S. at 690 ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Further, when considering the impact an absent witness may have, "a court should consider: '(1) the credibility of all witnesses, including the likely

18

impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution.'" Id. at 16-17 (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)). "All three factors derive from the court's obligation under Strickland to consider the totality of the evidence in making its prejudice determination." Id. at 17.

Here, the PCR court properly rejected defendant's argument, noting:

> [B]ased on the certification of his sister, the attorney was aware of [] defendant's witness sister and knew what . . . she would testify to . . . . [T]here appears to be no issue that the attorney knew about the witness.
>
> Again, the certification provides, in [p]aragraph [five], and this is from [defendant's sister], "I informed [defendant]'s attorney that I was willing to testify on behalf of my brother but I was never called to testify at trial." It is clear from [her] own statement that the attorney knew what her testimony would be and that he was aware of her as a witness. However when [defendant] asserts that his attorney failed to call an exculpatory witness he must assert the facts that would have been revealed, supported by affidavits or certification based on the personal knowledge of the affiant or the person making the certification.[5] That was done here. However, one of the most difficult strategic decisions that any trial attorney confronts is

---

[5] "Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c).

"determining which witnesses to call to the stand." []Arthur, 184 N.J. [] [at] 320[].

A trial attorney must consider what testimony a witness can be expected to give . . . and a variety of other tangible and intangible factors. Therefore, like other aspects of trial representation, a defense attorney's decision concerning such witnesses to call to the stand is "an art." And the [c]ourt's review of such decision should be "highly differential." Strickland, 466 U.S. at 689. In this case [] defendant argues essentially that . . . the failure of trial counsel to call [defendant's sister] was so prejudicial that it clearly fell below the . . . Strickland standard. However, the [c]ourt does not find, as a matter of law, that this decision is or reflects the failure.

The [c]ourt finds that what has been provided is not a prima facie case, that counsel's performance fell below an objective standard of reasonableness. That this is clearly—was a trial decision. There's no dispute again that he knew about the witness, that the witness was available, but he chose not to call this witness. That as a result of this apparent knowing decision not to call [her], the [c]ourt finds that this defense has not established the necessary prima facie showing requiring an evidentiary hearing.

Of course, the credibility of her exculpatory testimony would have been challenged given her close familial relation to defendant. See L.A., 433 N.J. Super. at 16. Further, we are satisfied that her testimony would have been cumulative, and would not have changed the result of the proceeding. Ibid.

Defendant's sister certified she was present during the assault and did not see defendant "hit or kick the victim." Instead, she "witnessed and heard [defendant] trying to stop the other people present from hitting and kicking the victim." That information was presented to the jury through defendant's and Graulau's statements to the police. In his recorded statement to the police, defendant admitted to being present during the assault. He claimed he was attempting to de-escalate the situation and denied assaulting or robbing the victim. In his electronically recorded statement, Graulau initially denied participating in the assault. After watching video surveillance, he admitted to assaulting the victim in front of his brother and defendant but denied robbing him. Graulau also indicated defendant was initially telling them to leave the victim alone.

Moreover, during cross-examination, the victim acknowledged he never told officers or detectives that defendant punched, kicked, or pushed him. He told detectives that defendant "grabbed me and threw me to the ground." The victim also testified that he initially told detectives he "felt" defendant "didn't really have nothing involved in doing [] it."

Ultimately, the jury not only heard the victim's testimony and defendant's and Graulau's statements, but also viewed the video surveillance recording that

21

showed defendant's role.  We note that the jury acquitted defendant of robbery. We are incredulous that anything his sister might have said on the witness stand would have changed the outcome with respect to the aggravated assault based on the video evidence of the confrontation and the role defendant played.  In sum, defendant has not established a prima facie case for ineffective assistance of counsel based on his attorney's decision not to call failing to call defendant's sister as a trial witness.  See Strickland, 466 U.S. at 668.

## VI.

Finally, we address defendant's contention, raised for the first time on appeal, that "PCR counsel did not fulfill her obligation to represent defendant . . . and thus provided ineffective assistance of counsel before the PCR court."  Specifically, defendant claims PCR counsel "failed to brief or argue the crucial issue that counsel never informed defendant that he was extended term eligible despite the fact defendant complained about the dereliction of his trial lawyer on at least three occasions."  He asserts that, "[h]ad PCR counsel properly served as her client's advocate and taken the necessary steps to 'prove' there was no evidence trial counsel ever told defendant he was facing an extended term of life in prison, she would have, at minimum, established a prima facie case requiring an evidentiary hearing."

22

The right to the effective assistance of counsel extends to PCR counsel. See State v. Rue, 175 N.J. 1, 18-19 (2002). PCR counsel must "advance all of the legitimate arguments requested by the defendant that the record will support," R. 3:22-6(d), and "make the best available arguments in support of them," Rue, 175 N.J. at 19. Thus, "PCR counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward." State v. Webster, 187 N.J. 254, 257 (2006) (citing Rue, 175 N.J. at 18-19).

We add the remedy for an attorney's failure to meet the requirements imposed by Rule 3:22-6(d) is not to vacate a trial verdict, guilty plea, or sentence, but rather to hold a new PCR proceeding. State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010) (citing Rue, 175 N.J. at 4). Importantly, moreover, a defendant's ineffective assistance of counsel claims against PCR counsel ordinarily should be raised in a second or subsequent PCR petition. See State v. Armour, 446 N.J. Super. 295, 317 (App. Div. 2016); see also R. 3:22-12(a)(2)(c). Like ineffective assistance of counsel claims against trial counsel, resolution of claims against PCR counsel generally involve matters outside the record. See Armour, 446 N.J. Super. at 317. Therefore, in most circumstances, such claims are better suited for a PCR petition. Ibid.

23

We agree with the State that defendant's claim of ineffective assistance of PCR counsel should be addressed in a second PCR petition. See ibid. We therefore decline to reach the merits of his claim against PCR counsel for the first time in this appeal. In doing so, we preserve also defendant's right to make his arguments to a PCR court. See McQuaid, 147 N.J. at 484 (noting that "when the issue of ineffective assistance of counsel has already been raised on direct appeal, it may be procedurally barred on PCR by Rule 3:22-5"); State v. Marshall, 173 N.J. 343, 351 (2002).

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division